Carlyle Commodity Mgt., L.L.C. v Certain Underwriters at Lloyd's London Subscribing to Policy with Unique Mkt. Reference B0753PC1410840000 (2021 NY Slip Op 02237)





Carlyle Commodity Mgt., L.L.C. v Certain Underwriters at Lloyd's London Subscribing to Policy with Unique Mkt. Reference B0753PC1410840000


2021 NY Slip Op 02237


Decided on April 13, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 13, 2021

Before: Kapnick, J.P., Kern, Singh, Scarpulla, JJ. 


Index No. 651151/17 Appeal No. 13567 Case No. 2020-03383 

[*1]Carlyle Commodity Management, L.L.C. Formerly Known as Vermillion Asset Management, LLC, et al., Plaintiffs-Appellants,
v
Certain Underwriters at Lloyd's London Subscribing to Policy With Unique Market Reference B0753PC1410840000 et al, Defendants, Certain Underwriters At Lloyd's London Subscribing To Policy With Unique Market Reference B1353DC1500837000 et al, Defendants-Respondents.


Weil, Gotshal & Manges LLP, New York (David L. Yohai of counsel), for appellants.
Clyde & Co Us LLP, New York (John M. Woods of counsel), for respondents.



Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered on or about July 17, 2020, which granted defendants-respondents' motion for summary judgment dismissing the complaint as against them, unanimously reversed, on the law, with costs, the motion denied, and the complaint reinstated.
Plaintiffs seek to recover under an excess marine cargo insurance policy for losses they sustained when a Moroccan oil refinery became insolvent. Under the arrangement between plaintiff Carlyle Commodities Management L.L.C., then known as Vermillion Asset Management, LLC, and the refinery, Carlyle would pay for crude oil that the refinery had contracted to purchase from third-party suppliers, and the refinery would subsequently repurchase the oil from Carlyle. After the Moroccan government froze the refinery's bank accounts, rendering the refinery unable to repurchase the commodities, plaintiffs filed a claim with their insurers, and subsequently commenced this action to recover under, inter alia, their excess policy for the value of commodities used by the refinery and never repurchased.
The motion court properly determined that, while their agreements provided that title remained with Carlyle and that the refinery was not to use the commodities owned by Carlyle until repurchasing them, Carlyle acquiesced in the refinery's refining of its crude oil before repurchasing it, and thus that the refinery's use of Carlyle's commodities without paying for them did not constitute a fortuitous loss covered by the insurance policies (see International Multifoods Corp. v Commercial Union Ins. Co. , 309 F3d 76, 83-84 [2d Cir 2002]). Carlyle was aware of shortfalls in the refinery's stock of crude oil and other petroleum products paid for by Carlyle and not yet repurchased, and it understood that these shortfalls occurred because, as its director of structured finance expressed it, the refinery "was, after all, a working refinery." Even if Carlyle was misled by the refinery's assurances that it was working to resolve its tax issues and restructure after the Moroccan government had frozen its bank accounts, there is no evidence that suggests that the refinery had an intent to steal the crude oil at the time it used the crude with Carlyle's acquiescence (see Sutro Bros. & Co. v Indemnity Ins. Co. of N. Am. , 386 F2d 798, 801 [2d Cir 1967]; AGCS Mar. Ins. Co. v World Fuel Servs., Inc. , 187 F Supp3d 428, 442-443 [SD NY 2016]).
Nevertheless, defendants-respondents are not entitled to summary judgment, because issues of fact exist as to whether Carlyle withdrew its acquiescence after the refinery's bank accounts were frozen, whether and to what extent the refinery continued thereafter to use Carlyle's products, whether Carlyle similarly acquiesced in the refinery's selling of Carlyle's refined products, and whether any such use and sale pierced the excess policy. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 13, 2021